Spear, J.
The first entitled case was argued orally to the second division only, but both eases were submitted to and considered by the whole court.
In the case of Jones, auditor, but one question is made by the record, and that is made also in the other case. It is this: Is a county auditor entitled to extra compensation from the treasury of the county for services in making for the commissioners the report of their financial transactions, required by section 917, Revised Statutes?
Provisions of the statutes bearing on the subject are: “Section 917 — The county commissioners, annually on or before the third Monday in September, shall make a detailed report in writing to the court of common pleas of the county, of their financial transactions during the year next *207 preceding the time of making such report. ” In case of neglect to make such report, the commissioners are subject to a fine of one hundred dollars, to be enforced by the prosecuting attorney.
“Section 1021. The auditor by virtue of his office, shall be secretary of the county commissioners, except as otherwise provided by law; he shall aid them, when requested, in the performance of their duties; he shall keep an accurate record of all their proceedings; and shall carefully preserve all documents, books, records, maps and papers, to be deposited and kept in his office.”
Section 850. The clerk shall keep a full and complete record of the proceedings of the board, and a general index thereof. He shall read the minutes of meetings; he shall certify to the record, etc.
Sections 1069 and 1070, provide a salary to county auditors, from eight hundred dollars to forty-four hundred, depending upon population.
Sections 1071, 1072, 1073, 1074, 1075, and 1076, provide further compensation for services in special matters therein enumerated, but none of them relates to the subject of inquiry here.
“Section 1077. All claims for services of the county auditors, which are payable from the county treasury, shall be made out in detail according'to the rates named in the foregoing sections, and shall be presented to the county commissioners, who, after being satisfied that the labor has been performed, shall allow said bill or claim and cause the same to be spread upon the minutes of the board;- and, after being so allowed, the county auditor is authorized to draw his warrant upon the treasurer of the county, for the amount of the bill or claim so allowed.”
*208 “Section 1078. The fees and compensation provided for by the foregoing sections, shall be in full for all services lawfully required to be done by the auditors of such counties; and it shall be unlawful for any county auditor to charge or receive any other or further fee or compensation, either as clerk of any board, or for any services rendered by him.”
“Section 894. No claim against the county shall be paid otherwise than by the allowance of the county commissioners, upon the warrant of the county auditor, except in those cases in which the amount due is fixed by law, or is authorized to be fixed by some person or tribunal, in which case the same shall be paid upon the warrant of the .county auditor, upon the proper certificate of the person or tribunal allowing- the same; but no public money shall be disbursed by the county commissioners, or any of them, but the same shall be disbursed by the county treasurer, upon the warrant of the county auditor, specifying the name of the party entitled to the same, on what account, and upon whose allowance, if not fixed by law.”
While these sections may be somewhat obscure as to some features of the law, two propositions appear to us to suggest themselves as rational deductions: 1. That there is no provision on which the auditor can found a valid claim for payment from the county treasury for making- the commissioners’ report. 2. That there is no authority given the commissioners to contract for the making. of their report and order the services paid from the treasury of the county. When to the foregoing we have added the rule, well established in this state, as held in Debolt v. The Trustees, 7 *209 Ohio St., 237, that “an officer whose fees are regulated by statute, can charge fees for those services only to which compensation is bylaw affixed,” and the corollary, as held in Anderson v. Commissioners, 25 Ohio St., 13; that “where a service for the benefit of the public is required by law, and no provision for its payment is made, it must be regarded as gratuitous, and no claim for compensation can be enforced,” which rule is more fully stated, but to like import in Strawn v. Commissioners, 47 Ohio St., at page 480, the conclusion inevitably follows, that the auditor’s services in making the report for the commissioners must be deemed, if not gratuitous, at least satisfied' by the salary attached to bis office, and that he is not entitled to extra compensation for such services, payable out of the county treasury. And this conclusion follows, whether the sections quoted impose the duty on him to make such report, or devolve it primarily upon the commissioners, the duty of the auditor being only a general one to aid them, a question which it is not necessary to decide in order to dispose of the case.
A question much argued, whether or not there can be a recovery back by the commissioners, we think does not arise upon the record in this case, because of the agreement of the parties embodied in the submission, that if the allowance is found not to be regular and proper under the law, judgment is to go against the defendant.
In the case of Lewis et al. v. The State, the demurrer raises not only the question as to the right of the auditor to be compensated for the services stated, but as to the sufficiency of the pleading in other respects, and especially whether there is *210 sufficient allegation of the illegal character of the acts of the auditor which form the ground of complaint. The rule is well understood that it is only facts which are well pleaded that are admitted by a demurrer, and that, in general, an averment that a defendant unlawfully received money on an account, would be insufficient. But we have here a showing that the party complained of was a county auditor; that the alleged services which formed the ground of the claim, appeared to have been rendered in his official capacity, and were charged against the county and payment for them received from the county’s treasury on the allowance of the commissioners. It would seem that, under our liberal rules respecting the construction of pleadings, enough is averred to raise the legal question whether such obtaining of the county’s money by a county officer is or not lawful, and if unlawful, that judgment might property follow, if otherwise the action could be maintained. That is, concede that the word “unlawfully” imports a legal conclusion rather than an allegation of fact, and adds nothing to the pleading, and concede farther, that the services charged had been rendered and the charge as to amount was reasonable, and that the claim had been allowed by the commissioners, still was it, in view of the statute law, the law of which the court must take notice and which it must apply to the facts, a lawful receiving of the county’s money, or not? The petition was, we think, in this respect, sufficient as against a general demurrer.
In considering the substance of the first, second, third, fourth, fifth, sixth, seventh and ninth causes of action, we have examined all the citations, statutory and other, given in the briefs, with many *211 additional, and are satisfied that the statutes furnish no support for the auditor’s charges set out in these causes of action. The claims challenged by these allegations of the petition, are founded upon charges for services in matters, some of which belong among the duties of other officers, and some, although among the duties of the auditor, are not proper subjects of extra charge against the county. As to the former, the holding of the courts below is justified on the ground, that, ordinarily, an officer cannot ask pay from the county for performing services which belong to another officer to perform. As to the latter, it is plain that no extra compensation is provided by statute, at least, not clearly so, and the holding rests satisfactorily upon the ground, heretofore stated, that fees are not allowed upon an implication, and where the duty is enjoined and no compensation is allowed, the presumption is that the service is intended to be gratuitous, or that compensation for it is to be regarded as covered by fees in other matters, or by salary, or both. Debolt v. Trustees, supra; Anderson v. Commissioners, supra; Strawn v. Commissioners, supra.
The sujeet matter of the eighth cause has been disposed of in discussing the other case.
We now reach the inquiry as to the effect of the allowance by the commissioners, and the question of recovery against the auditor and his bondsmen. It is urged that as a condition of avoiding the conclusive effect of the commissioners’ allowance, there must be shown either fraud or mistake, and neither is averred. This claim seems to rest upon the idea that the board of commissioners is practically the county, and that its official acts necessarily conclude the county. The assump *212 tiorr is fallacious. The legal status of a county and the relation of the commissioners to it, are well defined in Commissioners v. Mighels, 7 Ohio St., at pages 119 and 120: “Counties are local subdivisions of a state created by the sovereign power of the state, of its own sovereign will, without the particular solicitation, consent or concurrent action of the people who inhabit it; * * * a county organization is created almost exclusively with a view to the policy of the state at large, for purposes of political organization and civil administration, in matters of finance, of education, of provision for the poor, of military organization, of the means of travel and transport, and especially for the general administration of justice. * * * The idea that the board of county commissioners is the agent of the county, or of its people, is prominently advanced and pressed on our attention. That board is, in some sort, the agent of the county, it is true, inasmuch as it alone is authorized to sue and be sued In respect to contracts growing out of the county organization. * -x- * p>ut, it is said, the members of the board of county commissioners are chosen by the electors of the county, and hence the board is to be regarded as the agent of the county for whose torts in the performance of official duties the county ought to be responsible. True, the people of the county elect the board of county commissioners; but they also elect the sheriff and treasurer of the county. Are the people of the county, therefore, responsible for the malfeasance in office of the sheriff, or for the official defalcations of the county treasurer?”
But, it is insisted, the board of commissioners is a body corporate, and whether it is treated as *213 the county or not, it stands in place of the county as to its acts relating to the public; that, besides, when it sits to act upon claims against the county its functions are judicial and that, appeal being provided, that is the remedy for one aggrieved by its action. If we concede, as we may, that the board is, in a limited way, and for special purposes, a body corporate, that is, a quasi corporation, and-farther, that it-acts in a judicial, or quasi judicial capacity, and that when it adjudicates a claim which it is authorized to consider, appeal is the remedy, still we are at the threshold of the inquiry, for the ultimate question is one of power to act in this particular matter.
“A grant of power to such a corporation must be strictly construed, and when acting under a special power, it must act strictly on the conditions under which it is given.” Treadwell v. Commissioners, 11 Ohio St., at p. 190. The grant of power to commissioners to pass upon claims, is given in sections 1077 and 894, heretofore quoted, and is a very narrow one. The former section is to the effect that all claims for services of the auditor, which are payable from the county treasury, shall be made out in detail according to the rates fixed by statute, and presented to the commissioners, who, if satisfied that the labor has been per. formed, shall allow the bill, etc., and then the auditor is authorized to draw his wa rrant. That is, the right to present depends upon whether the claim be one the rate of which is fixed by statute, and upon whether the claim for some amount, may be legally paid from the county treasury. Both conditions must concur. But if the rate is not so' fixed, or if the claim is not legally so payable, no right to present it is given, and there is force in *214 the proposition, that if no right to present be given, then no power to allow could be implied, and if no power to allow, then the attempted allowance would be a nullity. Section 894, which regulates the allowance of claims other than those of the auditor, is to' the effect that, except in those cases in which the amount due is fixed by law, or is authorized to be fixed by some other person or tribunal, no claim against the county shall be paid otherwise than upon the allowance of the county commissioners, upon the warrant of the county auditor. The word “claim,” as used in these statutes, we think naturally imports a matter of charge which is based upon some, statute, or grows out of the performance of some authorized contract, wherein the inquiry of the commissioners as to the auditor, is confined to whether or not the service was rendered, and, as to other claims, to determine the amount due, as contrasted with a mere demand unsupported by law. Respecting the.latter class of demands, it would follow that the board is without authority to consider them. That is to say, referring to claims other than those of auditors, if the amount due is fixed by law, or is to be fixed by some other tribunal, then the commissioners may not act, but if the amount be not fixed in one of the other ways enumerated, then, the demand being one which may form the basis for a claim, the commissioners may fix the amount; it is the amount only which they determine; and in respect to claims by auditors, coming under section 1077, the commissioners, if satisfied that the services have been rendered, must allow the claim. The question is, has the auditor done the work? If no, refusal; if yea, allowance; but in all cases conditioned that the demand shall have a *215 legal basis. This is very far from authority to order payment of a demand which cannot have, for any amount, the sanction of law. This construction appears to give reasonable effect to a succeeding section (896) respecting appeals, while a different construction would, we think, defeat the spirit of that section. A party aggrieved may appeal to the common pleas within fifteen days upon giving written notice to the commissioners, or the auditor. An auditor whose demand had been ordered paid in full, as in the present case, would hardly agitate the question of appeal, and no one else could. So that, if the commissioners should entertain a demand wholly unfounded in law, and allow it, and their action upon such unfounded claim should be treated as final unless appealed from, the people’s money would be gone and they without remedy. On the other hand, if the commissioners should refuse to act on the ground of want of power, and a party feel aggrieved at the refusal, mandamus would test whether that refusal was justified or not. Ihe State ex rel. Gerke v. Commissioners, 26 Ohio St., 364. If the decision of the commissioners in refusing to act should be sustained, that would end the controversy, while if overruled, and that body ordered to pass upon the case, the party, if aggrieved at the action taken, might then appeal. This construction protects the interests of the people, as well as those of private parties. Nor does it conflict with the doctrine announced in Shepherd v. Commissioners, 8 Ohio St., 354, cited in argument. In that case, the claim of the recorder, the subject of controversy, was for making indexes, and the point decided is, that the recorder could not bring1 assumpsit against the county, but his only remedy was *216 by appeal from the adverse judgment of the commissioners. But the recorder’s claim was based upon a contract which the eommisioners had authority to make. He had, therefore, a valid claim for some amount, and the jurisdiction of the commissioners to pass upon it is unquestionable.
Giving this construction to the statutes, we conclude that the board, being a creature of statute, an agent whose powers are not general, but special, should be held to represent the county in respect to its financial affairs, only in such matters as are distinctly provided by statute. Authority is thus given to it to entertain and pass upon claims, which, for' some amount, may be the subject of legal demand against the county. Its jurisdiction being thus necessarily limited, is not of such a character as to permit a finding of jurisdiction by the board to be conclusive of the fact. Speaking more specifically, the board may properly pass upon a question whether in fact a given service has been rendered, and upon the amount which ought to be paid upon an unliquidated claim, where in law a claim may exist, i. e. where it has a legal basis on which to stand. But it is wholly without authority to sanctify a demand illegal because of’ being upon a subject which can admit of no claim, and thus give away the people’s money. It can no more do so than can any other agent bind his principal by acts unauthorized because without the scope of his authority.
From this it would follow that recovery- does not necessarily depend upon an allegation and showing, as ground of recovery, of fraud or mistake. True, it would be natural to assume that the board, when it approves a wholly unfounded claim, acts under a mistake of some kind. But *217 this we think not essential, inasmuch as the weakness arises not so much from a mistaken understanding of facts, or indeed a mistaken application of law, as from want of power to act at all. The cases at bar are essentially different in their facts, and we think in the principle of law involved, from that of Commissioners v. Noyes, 35 Ohio St., 201, cited in argument. There the case made by petition and answer, left the inference that the contract for the work done for the county was within the power of the commissioners, and legal, and the holding is, that there could be no recovery back at the suit of the commissioners without a showing of fraud or mistake. Here the accounts presented are found to be wholly illegal, and beyond the power of the commissioners to adjudicate. A number of cases have been cited where acts of commissioners, unauthorized when performed, are sustained on the ground of estoppel. No comment is necessary upon these adjudications, as no estoppel ’ is urged in either of the eases at bar.
But it is insisted that each presentation was simply a personal application for pay for personal services, and the money was drawn by virtue of the allowance of the commissioners after due submission and approval by the board, and that the drawing of the money in each case then became a personal, and not an official, act, and hence was not a violation of the official bond. We have already found that the several claims were all illegal; that is, there was no warrant of law for any claim whatever in either instance. This fact it must be presumed the auditor knew. Whether in fact he knew or not, it was his duty to know. The subject related to his own duties and his own *218 compensation. He could not be heard, in an inquiry of this character, to deny knowledge as to what the law provided in those respects, and it is quite the same, as matter of legal conclusion, for the purposes of the present case, as though the facts disclosed actual knowledge on his part of the unfounded character of his demands. The proposition that the drawing of money from the county treasury, by a county auditor, upon his own warrant, on a claim in his own favor, known by him to be illegal, for alleged services rendered the county, is a matter merely of individual action, and not a disregard of official duty, is at least a startling one. It appears to be based upon an attempt to distinguish between the man as an individual, and the man as an officer. The distinction cannot hold. The petition declares that Lewis received the money as auditor. But is there not sufficient showing, aside from this, that the acts were official acts? The money being drawn upon the auditor’s official warrant, why is not that an official act? We think it is. It is so held in Cricket v. The State, 18 Ohio St., 9. As said by White, J., in the opinion: “The warrant purports to be an official act; it was drawn under the color of office, and constituted the means by which the money was obtained from the treasury.” See, also, to the same purport in a case involving the bond of a county treasurer, Tlve State v. Kelly, 32 Ohio St., 421. If the claim in his favor be unfounded, the drawing of the money upon it would seem to be a violation of official duty at common law; but it is in terms made unlawful by section 1078, in this distinctanguage: “and it shall be unlawful for any county auditor to charge or receive any other or further fees or compensation, either as clerk of *219 any board, or for any other services rendered by him.” In the face of this provision, how can it be said that the acts complained of are not malfeasances? If they are, they .clearly come within the condition of the bond. Cricket v. The State, supra. That the legislature of this state, having-required, as a condition of holding office by certain officers, that they give bond for the faithful performance of duty, would then intentionally direct a course of procedure which will permit such officers, in their official capacity and by their official warrants, to illegally draw money from the public funds, for' their own use, is equivalent to saying that a principal, before employing an agent, would require him to give security, but would intentionally so frame the bond as to afford protection to all the world save the principal himself, and is past belief; nor do we think that body has done so inadvertently. Suppose, say counsel, in support of the proposition that the act of drawing the warrant and the money is not a violation of the bond, that an ex-auditor should present an unauthorized claim to the commissioners, which being allowed, a warrant is drawn by his successor on the treasury for the amount. Would the auditor, by drawing such warrant, violate the condition of his bond? Well, we are not called on to decide this question, for we have not that ease. .That would be a situation where the auditor presumably relied upon the order of the commissioners without knowledge of its illegality and in a matter in which he had no personal concern or interest. Our case is one where the auditor has acted from the inception of the transaction on his own volition in a matter which on its face concerns his own official pay, and the warrant therefor, drawn in his official capacity *220 by force of the statute which defines the powers and duties of his office, is unauthorized at best, and in defiance of a statute which says it shall be unlawful for him to charge or receive any compensation for such alleged service.
If this conclusion be correct, then an action is clearly maintainable against both the auditor and the bondsmen by the prosecuting attorney. Section 1131, Revised Statutes, provides for the appointment by the court of common pleas of a committee to examine the books and papers in the office of the auditor, and for the making to the court of a report of their proceedings, and the results of their examination, while section 1133, makes it the duty of the presecuting attorney, in case the report shows a breach of the bond, to forthwith commence an action on the bond of the delinquent officer. The report of such committee is the basis of the action here, and we regard it as'well founded.

Judgments affirmed,.